E. J. LILLY v. THE BOARD OF COMMISSIONERS OF CUMBERLAND
COUNTY.

Money deposited in banks loses its distinct character as money, and becomes a debt due to the depositor from the bank, and as such, is a proper subject for taxation.

Solvent credits are property, and like other property are liable to taxation un-der our Revenue law. Nor does it make any difference if such credits were derived from the trade of a merchant in the usual course of a business, also taxed.

ARGUENDO: The State, until forbidden by Congress, has the power to tax Na-tional Bank bills.

PETITION to the Board of Commissioners of CUMBERLAND county to reform the tax lists, heard by *Burton, J.*, at Cham-bers, June, 1873, in the town of Fayetteville, upon the fol-lowing CASE AGREED:

I. On the —— day of April, 1873, the plaintiff in giving in his list of taxables to the list-takers for Cross Creek Township, in said county, was required by them to list his money on hand the 1st day of April, 1873, and also his sol-vent credits, being debts due and owing to the plaintiff.

II. The tax lists, as made out by the list-takers for Cross Creek Township, was returned to the defendants, the Board of Commissioners of Cumberland county, who by their ad-vertisement, appointed the 21st day of May, 1873, for the hearing before them of complaints of the action of the list-

takers; at which time the plaintiff appeared and complained that he had been charged with a tax upon his money on hand and on his solvent credits, and prayed the defendants to correct the said list by striking therefrom the tax upon these subjects. This the defendants refused, and the plaintiff appealed to the Superior Court.

III. The money on hand listed by the plaintiff, is money deposited in bank, consisting of National Bank notes, and United States Treasury notes, which were received by him in the usual course of his business, and the solvent credits listed are notes and accounts owing to him by his customers—the defendant being a wholesale and retail merchant doing business in Fayetteville.

IV. That the business of the defendant is taxed by the laws of North Carolina, and the said money and notes are the direct proceeds of such taxed business.

The parties claim as follows:

I. The plaintiff insists that his money on hand and solvent credits are not subject to taxation under the Constitution and Laws of North Carolina, and the Constitution and Laws of the United States.

II. The defendants claim that these subjects of taxation are especially enumerated and defined in the Constitution and Laws of North Carolina, and that they are bound to impose the tax provided by law on these subjects.

The parties, plaintiffs and defendants, agree upon the foregoing case and submit the same to the Hon. R. P. BUXTON, Judge, &c., to determine the following questions:

1. Whether money on hand and solvent credits are subject to taxation by the Constitution and Laws of North Carolina and the Constitution and Laws of the United States.

2. Whether money on hand and solvent credits, which are the proceeds of a business taxed by the laws of the State of North Carolina, are proper subjects of taxation un-

der the laws of North Carolina and the Constitution and Laws of the United States.

It was admitted that the money before designated was a general deposit in bank.

After argument, his Honor delivered his opinion as follows:

"I think it may be considered settled by the Supreme Court of the United States, in the case cited for the plaintiff, *Bank* v. *Supervisors*, 7 Wallace 26, and *Veazie Bank* v. *Fennel*, 8 Wallace 533, that United States Treasury notes and National Bank notes are exempt from State taxation, upon grounds of public policy, appertaining to the general government. So far as the case in hand is concerned, there seems to arise two questions necessary to be determined before it can be satisfactorily decided.

1. Do United States Treasury notes and National Bank notes after they are deposited by the owner to his credit in a bank continue to be the money of the depositor or the bank? If they continue to be the money of the depositor, then they continue to be the evidence of debt due from the Government to the depositor, and according to the above recited case he is not to be taken on their account. If, however, they become the money of the bank then the Government no longer owes the depositor, but owes the bank, and the bank owes the depositor. In other words the depositor becomes the holder of a "solvent credit," not upon the government, but upon the bank. The question of Government policy becomes eliminated from the case as a difficulty in the way of the taxing power of the State, and the remaining question would be,

2. Are solvent credits between citizens taxable by the State?

The first question relating to the nature and character of deposits in bank is incidentally touched upon in the case of *Planters Bank of Tennessee* v. *Union Bank of Louisiana,*

decided at the last term of the Supreme Court of the United States, in which case the following language occurs: (I quote from the case as reported in the Raleigh *News*, 3d June, 1873.) Generally a bank becomes a debtor to its depositor by its receipt of money deposited by him, and money paid into bank ceases to be the money of the depositor and becomes the money of the bank, which it may use by returning an equivalent when demanded, by paying a similar sum to that deposited. A collecting bank is the debtor of the depositor, and is under obligation to pay on demand, not the identical money received, but some equal in legal value. But this is the rule where money has been deposited and where there has been no contract or understanding that a different rule shall prevail.

This passage I consider decisive of the question relating to the nature and character of deposits in bank, so far as deposits of a general nature as distinguished from special deposits are concerned. In the absence of a statement to the contrary, I consider the deposits referred to in the "case agreed," to be general deposits subject to check. We have the case of an individual owning "solvent credits" on a bank. This brings me to the consideration of the second question:

2. Can the State of North Carolina tax solvent credits between individuals?

In the case of the *State* v. *Bell*, Phill. 76, and the cases therein cited, the general subject of State taxation, its nature, and the extent of its power, is discussed. "The taxing power is one of the highest and most important attributes of sovereignty. It is essential to the establishment and continued existence of the government." To the same effect speak the Supreme Court of the United States in *Nathan* v. *The State of Louisiana*, How. 73: "The taxing power of a State is one of its attributes of sovereignty, and when there has been no compact with the Federal Government, or ces-

sion of jurisdiction for the purposes specified in the Constitution, this power reaches all the property and business within the State, which are not properly the means of the general government, and as laid down by this Court, it may be exercised at the discretion of the State." It is suggested that this general power of taxation on the part of the State, is further limited by a clause of the Federal Constitution, Art. 1, sec. 10 : "No State shall pass any law impairing the obligation of contracts;" and it is urged that the taxation by a State of a " credit," has the effect of impairing the obligation of a contract, and has been so decided recently by the United States Supreme Court. The case alluded to is probably *Walker* v. *Whitehead,* not yet reported. I have not seen the case referred to, only a very brief, and I must think a very inaccurate newspaper abstract of it.

The abstract is as follows : "No. 123, *Walker* v. *Whitehead,* Error—to the Supreme Court of Georgia. This was an action on a promissory note, and it was dismissed because it did not appear that certain taxes (chargeable on all debts) had not been paid on the debt. This Court reversed the judgment, holding that the act imposing taxes on debts by the State is unconstitutional, as impairing the obligation of contracts. Mr. Justice Swayne delivered the opinion," &c. A distinguished legal friend, Chairman of the Judiciary Committee, who is well up with the current literature of the profession, whom I have consulted about this matter, has kindly furnished me with his views. He says: " The Legislature of Georgia in 1868, with the view of embarrassing the collection of *ante bellum,* or old debts (so called,) passed a law imposing a tax on all such debts, and required the holders of all such claims, before they could sustain an action thereon, to exhibit in Court the receipt of the proper fiscal officer for the amount of the tax. This legislation was of a piece with the Stay laws of that State, and *in pari materia* with their homestead recently rent in twain by the

Supreme Court of the United States. A case was taken to the United States Court involving the right of the State to tax credits in this way. Shall the rights of parties be defeated by such discrimination? The Supreme Court held that such legislation was unconstitutional; not as I understand, because the State taxes solvent credits, but because of the discrimination and the obvious purpose to defeat the holders of such obligations. You remember our Legislature, about 1869, did the same thing, and you ruled against it without hesitation and without supposing that you thus exhausted the power to tax solvent credits.

In the absence of the case of *Walker* v. *Whitehead,* above referred to, I accept my learned friend's statement as a satisfactory explanation of the grounds upon which that case rests; and I am of opinion that it does not militate against the right of a State to tax solvent credits in a legitimate way.

According to the case agreed, the plaintiff, under my construction, had no money on hand, being all deposited to his credit in bank. It constituted a "solvent credit," and I hold and so decide that it was taxable, and that the Commissioners of Cumberland county did right to reject the application.

The further ground stated in the case agreed, why the money on hand and solvent credits should not be taxed because derived from a business already taxed was not argued before me, and as I suppose was thrown in as make-weight. The proceeds of the plaintiff's business were converted into a new form, and I think were as much taxable under the form of solvent credits as they would have been had they been converted into a house and lot.

It is adjudged by the Court that the proceedings be dismissed at the costs of the plaintiff.

From this judgment the plaintiffs appealed.

*Fuller & Ashe* and *B. Fuller,* for appellant.

*James C. McRae,* contra, submitted :

I. Art. 5, sec. 3, Constitution of North Carolina, directs that laws be passed taxing by uniform rule all moneys, *credits,* &c. If we admit that United States. securities, National Bank bills and national currency are non-taxable, then by this case it appears that plaintiff had none, but in lieu thereof had money deposited in bank. This was a debt due plaintiff from the bank and was a solvent credit which is taxable. *Planters' National Bank of Tennessee* v. *Union Bank of Louisiana,* decided at last term of Supreme Court of United States.

II. If the taxation of solvent credits impairs the obligation of contracts, which we deny, then it is not suggested in the case that this deposit was made before the adoption of our present Constitution, and certainly this taxation would *not impair* the obligation of any contract entered into since the adoption of the present Constitution of North Carolina.

III. Indeed since the laws of 1848–9, title Revenue, laws have always been in existence in effect taxing solvent credits.

IV. As to the money being the proceeds of a taxed business. There is nothing in the law or in the Constitution to prevent the taxation of a solvent credit arising from a taxed business. Suppose it had been invested in other personal or real property ? This is not an income tax.

READE, J. The points intended to be presented in this case are :

1. As to the power of the State to tax United States Treasury notes and National Bank bills.

2. As to the power of the State to tax solvent credits.

3. As to the liability to taxation under the present State Revenue Law of solvent credits; the consideration for which

were sales of goods by a merchant whose business is taxed.

This last point though presented by the record, his Honor says was not argued before him, and he considered it as free from doubt that such credits are liable to taxation, and we agree with him.

The second point as to the power of the State to tax solvent credits, we have no doubt. A credit is *property;* and as such, liable to taxation like other property. We are unable to appreciate the argument that a tax of credits "impairs the obligations of contracts." The obligation of a contract is the duty of its performance by the debtor; and a tax upon the creditor does not enable the debtor to avoid or disable him from performing it. It is true it makes a credit less valuable to tax it; but the same is true of any other property.

The first was treated as the main point in the case. And it is the same point as in the case *Ruffin* v. *Commissioners of Orange,* at this term; where we consider it more at large.

We agree with his Honor in the conclusion at which he arrived; and we agree with him in his reasons for his conclusion, except that we are inclined to think that the State may tax National Bank bills until Congress forbids them to be taxed. His Honor's views are very well stated in the record, and we adopt them as our own, with the qualification stated.

There is no error.

PER CURIAM.                    Judgment affirmed.